Glen R. EAVES et al., Plaintiffs,

v.

Ralph W. PENN, Individually, and Ralph W. Penn as Trustee for Glen's Employees Retirement Plan, Defendants.

W. J. USERY, Jr., Secretary of Labor, Plaintiff,

v.

Ralph W. PENN, Individually, and as Trustee of Glen's Profit-Sharing Plan, et al., Defendants.

Nos. CIV–76–0427–T and CIV–76–0450–T.

United States District Court, W. D. Oklahoma.

Dec. 29, 1976.

Subsequent Orders on Jan. 7, 1977.

Howard Lynn Wisdom and Billy Jack Hendricks, Oklahoma City, Okl., for plaintiffs in CIV–76–0427–T.

David R. Dickey, Stephen M. Dickey, and Todd W. Markum, Oklahoma City, Okl., for defendants in CIV–76–0427–T.

Robert P. Gallagher and Mary S. Calfee, U. S. Dept. of Labor, Plan Benefits Security Div., Washington, D. C., Harvey M. Shapan and James E. White, Regional Solicitor's Office, Dallas, Tex. (On Briefs Only—Monica Gallagher, Counsel for Litigation, Plan Benefits Security Div., Washington, D. C.), for plaintiff in CIV–76–0450–T.

Howard Lynn Wisdom and Billy Jack Hendricks, Oklahoma City, Okl., for defendants Eaves.

David R. Dickey, Stephen M. Dickey, and Todd W. Markum, Oklahoma City, Okl., for defendant Penn.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RALPH G. THOMPSON, District Judge.

The first of these actions was filed on May 25, 1976, by Glen R. Eaves and Alleen M. Eaves and others alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA) and setting out additional common law causes of action against Ralph W. Penn. The Secretary of Labor filed a separate suit on June 3, 1976, alleging violations of ERISA arising out of the same transactions which were involved in the previously filed lawsuit. The Secretary of Labor named Glen R. Eaves, Alleen M. Eaves and Ralph W. Penn as defendants. The Court found the two cases to involve common issues of law and fact and ordered the cases consolidated on June 3, 1976. On that same day Glen Eaves and Alleen Eaves offered to pay $738,139.13 into the court registry pending the determination of the issues involved in this lawsuit by the Court. The offer was accepted by the Court and the sum was paid into the court registry on June 7, 1976.

On June 10, 1976, the consolidated cases came on for evidentiary hearing in regard to the application for preliminary injunction, which hearing was ended when the parties agreed to a consent order. This order was amended on November 24, 1976.

A pretrial conference was held on November 11, 1976, at which the issues for trial were narrowed. On November 23, 1976, a trial was had to the Court sitting without a jury on these issues. The Court now having heard the evidence presented, read the briefs and memoranda filed, considered the proposed findings filed by the respective parties, and considered the law applicable to the facts established by the evidence, does hereby make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Glen's, Inc. operates a steak house, club, hickory pit and catering service on N.W. 10th Street in Oklahoma City, Oklahoma, and has done so over the past twenty-five years. Glen's restaurant is well known in Oklahoma City and the southwest area and is considered to be one of Oklahoma City's landmark restaurants.

2. From January 1, 1958, until January 16, 1976, the employees of Glen's, Inc. have participated in an employee pension benefit plan known as Glen's Profit-Sharing Plan (hereinafter the "Profit-Sharing Plan" or the "Plan") which Plan has provided retirement income to employees. On December 31, 1975, the Profit-Sharing Plan had 41 participants and beneficiaries all of whom were employees or former employees of Glen's, Inc. From its inception through December 31, 1975, the Profit-Sharing Plan received contributions from Glen's, Inc. nearly every year.

3. A primary purpose of the Profit-Sharing Plan, since its inception, has been to provide retirement income to participants. The participants of the Profit-Sharing Plan have relied on the Plan for retirement income.

4. The terms and conditions for participation in and receipt of benefits from the Profit-Sharing Plan are contained in the document known as Glen's Profit-Sharing Plan Trust Agreement. The Trust Agreement provides in relevant part, that:

a. the corporation shall make contributions to the plan each year in an amount not less than 5% of net profits;

b. contributions, forfeitures, and all income to the trust shall be allocated to participants' individual accounts each year;

c. distributions to participants shall be made in five equal annual installments in cash;

d. the plan shall not be amended so as to impair the rights of participants without the prior specific consent of such participants; and·

e. the plan shall not be amended the effect of which is to permit any part of the trust fund to be used for purposes other than for the exclusive benefit of the participants or beneficiaries.

5. From 1958 until January 16, 1976, Glen R. Eaves served as trustee of the Profit-Sharing Plan. As trustee of the Profit-Sharing Plan, Glen R. Eaves had broad discretionary authority among other things to control and invest Plan assets, to provide for services to the Plan, to pursue, settle, or compromise claims on behalf of or against the Plan, and to distribute benefits payable under the Plan.

6. From 1958 until January 16, 1976, Alleen M. Eaves served as a member of the Plan Committee provided for by the terms of the Profit-Sharing Plan, which Committee had administrative responsibilities regarding the operation of the Profit-Sharing Plan. As a member of the Plan Committee, Alleen M. Eaves had the authority and the duty to participate in the final determination of all questions arising under the Plan, the supervision of the activities of the Plan trustee, and the appointment or removal of the Plan trustee.

7. On January 16, 1976, the assets of the Profit-Sharing Plan totalled $522,135.67 which included $62,738.80 cash, held in a checking account at the Capitol Hill State Bank, and a certificate of deposit issued by the Capitol Hill State Bank in the amount of $450,000 on which the accrued interest as of January 16, 1976 was $9,396.87, which annual interest was not allocated.

8. On January 16, 1976, Glen R. Eaves and Alleen M. Eaves owned 6,975 shares of Glen's, Inc., which shares constituted all of the outstanding shares of Glen's, Inc.

9. On December 17, 1975, Ralph W. Penn, Glen R. Eaves and Alleen M. Eaves executed an agreement for the sale of all of the stock of Glen's, Inc. to Penn and to the Profit-Sharing Plan. This agreement was modified by an addendum agreement and a supplemental addendum agreement also executed by Penn, Glen R. Eaves, and Alleen M. Eaves. The agreement as modified provides in relevant part:

a. that the sellers, Glen R. Eaves and Alleen M. Eaves own all of the outstanding and issued shares of the stock of Glen's, Inc.;

b. that the buyers, Ralph W. Penn and the Profit-Sharing Plan desire to purchase all of that stock;

c. that prior to closing sellers will cause the officers and directors of the Company to resign and be replaced by individuals designated by Penn;

d. that the sellers shall at closing cause the trustees of the Plan to resign and be replaced with individuals designated by Penn;

e. that Penn intends to cause the Plan to be amended to include authority to acquire employer stock at the election of the trustees;

f. that Glen's, Inc. shall make a contribution to the amended Plan;

g. that Penn shall pay to sellers for 168 shares of stock the sum of $25,005.12;

h. that the Plan, as amended shall pay to the sellers for 6,807 shares of stock the sum of $1,013,134.01; and

i. that closing will take place on January 16, 1976 at the Will Rogers Bank.

10. Pursuant to the terms of the agreement and addenda Glen R. Eaves, Alleen M. Eaves, Ralph W. Penn, and others met at the offices of the Will Rogers Bank on January 16, 1976, and executed the transactions listed below:

a. Alleen M. Eaves resigned as vice president and as a director of Glen's, Inc. and as a member of the Plan Committee of the Profit-Sharing Plan;

b. Ralph W. Penn became a member of the board of directors as did his designees Juanita Boedeker and Charlotte Robison; Penn a/nd his designees Juanita Boedeker and Charlotte Robison also became members of the Plan Committee;

c. Glen R. Eaves resigned as president of Glen's, Inc.;

d. Ralph W. Penn became vice president of Glen's, Inc. and chairman of the executive committee of the board of directors;

e. Glen R. Eaves resigned as trustee of the Profit-Sharing Plan and defend-

ant Ralph W. Penn replaced him as trustee;

f. Ralph W. Penn, as trustee of the Profit-Sharing Plan, amended the Profit-Sharing Plan by substituting in its place the Glen's Employee Stock Ownership Plan and Trust;

g. Penn, on behalf of Glen's, Inc., made an advance contribution to the amended Plan of approximately $490,998.34;

h. In consideration of 168 shares of the stock of Glen's Inc. delivered to Penn individually by Glen R. Eaves and Alleen M. Eaves, Penn delivered to Alleen M. Eaves $24,005.12, by cashiers check no. 10276 drawn on Will Rogers Bank, and to Glen R. Eaves and Alleen M. Eaves, $1,000 by cashiers check no. 9299 drawn on Will Rogers Bank for a total consideration of $25,005.12;

i. In consideration of 6,807 shares of the stock of Glen's, Inc. delivered to Penn, as trustee for the amended Plan, by Glen R. Eaves and Alleen M. Eaves, Penn, acting as trustee for the amended Plan, endorsed and delivered to Glen R. Eaves:

(1) $238,575.44 by cashiers check no. 10278 drawn on Will Rogers Bank;

(2) $150,000 by certificate of deposit no. 4940 issued by Capitol Hill State Bank which had accrued interest on that date of $3,132.29;

(3) $450,000 by certificate of deposit no. 4941 issued by Capitol Hill State Bank which had accrued interest on that date of $9,396.87; and

(4) delivered to Alleen M. Eaves $162,029.41 by cashiers check no. 10279 drawn on Will Rogers Bank for a total consideration of $1,013,134.01.

11. The $490,998.34 advance contribution made by Penn to the amended Plan on behalf of Glen's, Inc. consisted of $215,998.34 drawn from the operating capital and liquid assets of Glen's, Inc. and $275,000 obtained by Glen's, Inc. as the partial proceeds of a loan made by the Will Rogers Bank on January 16, 1976, which loan was secured by a first mortgage on all of the real property and improvements thereon of Glen's, Inc.

12. On January 16, 1976, Penn borrowed $25,000 from Glen's, Inc. which he used to purchase his individual shares of stock of Glen's, Inc. from Glen R. Eaves and Alleen M. Eaves.

13. The total consideration paid by Ralph W. Penn from his personal assets in the sale transactions referred to above was $1,000.00.

14. By virtue of his ownership of 168 shares of stock of Glen's, Inc., and his position as trustee of the Plan, Penn became chairman of the board of directors, vice president of the company and a member of the Plan Committee and exercised complete control over the affairs of Glen's, Inc. and the Plan.

15. The Plan Committee as reconstituted on January 16, 1976, did not have authority to, nor did it in fact, advise the defendant Penn with respect to the investment of Plan assets in the stock of Glen's, Inc.

16. The amended Profit-Sharing Plan provides, in relevant part, that:

a. contributions to the Plan are within the discretion of the board of directors (no contribution is required);

b. contributions to the Plan may be in shares of Glen's, Inc. or in cash; Plan assets to thhe extent practicable, shall be invested in shares of Glen's, Inc., as directed by the company;

c. distributions to participants shall be made in shares of Glen's, Inc. and at the discretion of the Plan Committee, in equal annual installments over a period of years not to exceed the participant's life expectancy;

d. the Plan has a right of first refusal to purchase shares of Glen's, Inc. distributed to participants (participants, however, have no right to require the

Plan or Glen's, Inc. to purchase shares of Glen's, Inc. distributed to them);

e. shares of Glen's, Inc. held by the Plan trustee on behalf of the Plan shall be voted by the Plan Committee; and

f. distribution of benefits to participants may be delayed until age 65.

17. On or after January 16, 1976, Glen's, Inc. made a contribution to the Stock Ownership Plan of $1,000 which was, pursuant to the trust instrument, allocated to participants' accounts.

18. The advance contribution of $490,998.34 made to the Plan on January 16, 1976 has not been allocated to participants' accounts nor has any person who has received distributions from the amended Plan since January 16, 1976 received any distribution attributable to that advance contribution.

19. Ralph D. Sitton has been an employee of Glen's, Inc. and a participant in the Profit-Sharing Plan since the Plan was instituted in 1958. On April 23, 1976, Ralph D. Sitton terminated his employment with Glen's, Inc. On or about the date of Sitton's termination of employment he questioned officers of Glen's, Inc. and of the amended Plan about payment of his benefits under the Plan. Officers of Glen's, Inc. and officials of the amended Plan, with the knowledge and agreement of Penn, informed Sitton that he would receive his benefits over a period of 21 years. Sitton was later advised he could receive his benefits over a period of 5 years.

20. On February 5, 1976, defendant Penn negotiated on behalf of Glen's, Inc. a loan of $48,000 from the Will Rogers Bank. The purpose of the loan was to purchase shares of stock of Glen's, Inc. which had been distributed to retirees under the terms of the amended Plan.

21. The cost to Glen's, Inc. to redeem one-fifth of the shares of stock due to eligible participants and beneficiaries under the Plan in January, 1977, valued at the price per share paid by the Plan for the stock, is approximately $74,000. Glen's, Inc. does not have sufficient cash or current assets to repurchase those shares.

22. Prior to his employment by Glen's, Inc., Penn had no substantial experience in the management or operation of a restaurant business nor had he received compensation from any employer in excess of $25,000 per year. Penn currently is compensated by Glen's, Inc. at a rate in excess of $40,000 per year.

23. In addition to the loan described in number 10 above, Penn has caused several loans to be made to himself by and from the assets of Glen's, Inc. since January 16, 1976.

24. After obtaining control of Glen's, Inc. Penn authorized four loans of $2,000 each, which were made from the assets of Glen's, Inc., to Larry W. Stacy, a business acquaintance of Penn. In February, 1976, Penn authorized a loan of $8,000 which was made from the assets of Glen's, Inc. to Roy Hackett, a business acquaintance of Penn. The loans to Stacy and Hackett were not secured.

25. In August, 1976, Penn purchased a restaurant located in Norman, Oklahoma, which is now known as Glen's Hik'ry Pit # 2, and he has operated that restaurant since that time. From August 30, 1976 until November 15, 1976, Penn provided substantial quantities of food from Glen's, Inc. to the Hik'ry Pit # 2 including baked goods and cooked meats prepared in the kitchens of Glen's, Inc. Until late October or November, 1976, Glen's, Inc. was paid for those shipments on the basis of the cost of the raw ingredients plus five percent; the payments did not include the costs of overhead and labor incurred by Glen's, Inc. in preparing the goods shipped. These prices were unreasonably low under the circumstances. Additionally, no consideration has been paid by Penn to Glen's, Inc. for the good will derived from the use of the name "Glen's Hik'ry Pit". The Court finds that the name of an established and well-known business is a valuable asset.

26. On October 29, 1975, the Eaves, themselves or through their attorney, received an arms-length offer to buy Glen's,

Inc. for a purchase price of $896,000 which offer did not involve the use of Plan assets.

27. Prior to the sale of the stock of the Company to Penn and the Plan, the Company had $114,376 in cash, current liabilities of $88,398, marketable securities valued at $152,616, other current assets of $120,441 and long-term liabilities of $60,000; the Company enjoyed a strong and healthy financial condition.

28. As a result of the advance contribution to the Plan of $490,998.34 which was accomplished by an expenditure of Company assets of $215,998.34 and the creation of a loan liability of the Company of $300,000, the value of the Company and the shares of the Company purchased on behalf of the Plan was reduced by approximately $490,998.34.

29. The advance contribution to the Plan of $490,998.34, which is carried by the Company as an asset on its books, has no substantial value to the Company and is not properly regarded as an asset of the Company.

30. Between January 1, 1976 and September 30, 1976, Glen's, Inc. has incurred net operating losses in excess of $121,577, which losses have further impaired the value of Glen's, Inc. and the value of the shares of Glen's, Inc. held by the Plan has thus been further substantially reduced.

31. The shares of Glen's, Inc. are not publicly traded and have no ready market.

32. As of September 30, 1976, the Company had a bank overdraft of $32,964, current assets of $105,900, current liabilities of $168,517, and long-term liabilities of $362,256; the Company is in serious financial difficulty.

33. The stockholders' equity in the Company has dropped from its pre-sale value of $746,711 to a current value, discounting the value of the $490,998.34 advance contribution, of approximately $76,000.

34. The net effect of the carrying out of the agreement between Glen R. Eaves and Alleen M. Eaves and Ralph W. Penn was an impairment of the assets of the Plan.

## CONCLUSIONS OF LAW

### Jurisdiction

1. This Court has jurisdiction over the subject matter of this action and the parties thereto by virtue of ERISA section 502(e), 29 U.S.C. § 1132(e); venue of this action is properly laid in this district by virtue of ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2).

2. The Glen's Profit-Sharing Plan is an employee pension benefit plan within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), which is maintained by an employer in an industry affecting commerce within the meaning of ERISA section 4(a)(1), 29 U.S.C. § 1003(a)(1).

3. Glen R. Eaves, Alleen M. Eaves and Ralph W. Penn were, at all times relevant to this action, fiduciaries with respect to the Glen's Profit-Sharing Plan within the meaning of ERISA 3(21), 29 U.S.C. § 1002(21).

4. The Secretary of Labor has authority to bring this action by virtue of ERISA section 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5).

### Liability

5. Glen R. Eaves failed to discharge his duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan as required by ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), in that, for consideration to be paid to himself and Alleen M. Eaves, he agreed with Ralph W. Penn to resign as trustee of the Plan and to cause Penn to be appointed Plan trustee, to sell to the Plan, and to commit the Plan to buy, approximately 97% of the stock of Glen's, Inc.; and he performed and accepted performance under the terms of that agreement.

6. Glen R. Eaves failed to discharge his duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence,

and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), in that he entered into an agreement with Penn to resign as Plan trustee and to cause Penn to become Plan trustee, to allow defendant Penn to amend the Plan, to sell to the Plan approximately 97% of the stock of Glen's, Inc.; and he performed and accepted performance under the terms of that agreement without adequate attention to or assessment of the effect of those transactions on the value of the assets of the Plan and the interests of Plan participants and beneficiaries.

7. Alleen M. Eaves failed to discharge her duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, as required by ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), in that, for consideration to be paid to herself and Glen R. Eaves, she agreed with Penn to cause Penn to be appointed Plan trustee, to sell to the Plan, and to commit the Plan to buy approximately 97% of the stock of Glen's, Inc.; and she performed and accepted performance under the terms of that agreement.

8. Alleen M. Eaves failed to discharge her duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), in that she failed to take reasonable steps to prevent the performance of Glen R. Eaves and Ralph W. Penn under the terms of their agreement for the purchase of the stock of Glen's, Inc., by the Profit-Sharing Plan.

9. Ralph W. Penn failed to discharge his duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, as required by ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), in that, in consideration of legal ownership as trustee of the Profit-Sharing Plan of a controlling number of shares of Glen's, Inc., he entered into an agreement with Glen R. Eaves to become trustee of the Plan, and, as trustee of the Plan, to pay all of the assets of the Plan to Glen R. Eaves and Alleen M. Eaves in exchange for approximately 97% of the stock of Glen's, Inc.; and he performed and accepted performance under the terms of that agreement.

10. Ralph W. Penn failed to discharge his duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, as required by ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), in that he agreed with Glen R. Eaves and Alleen M. Eaves to become Plan trustee and, as trustee of the Plan, to pay all of the assets of the Plan to the Eaves in exchange for approximately 97% of the stock of Glen's, Inc.; and he performed and accepted performance under the terms of that agreement without adequate attention to or assessment of the effect of those transactions on the value of the assets of the Plan and the interests of Plan participants and beneficiaries.

11. The Court, having found these parties to have violated their fiduciary duties with respect to the Plan, has broad discretion in fashioning remedial and equitable relief including rescission. ERISA section 409(a), 29 U.S.C. § 1109(a). The Court will mold the relief to protect the rights of the beneficiary, Bogert, *Trusts*

838

*and Trustees, Second Edition*, section 861 at p. 3. Complete rescission of the sale of stock of Glen's, Inc., to the Plan, restoration of income and profits lost to the Plan and the appointment of a Plan trustee approved by the Court will best serve the goal of making whole the Plan and the interests of participants and beneficiaries.

12. Penn's suggestion that relief should be limited to recovery of excess consideration paid by the Plan or a guarantee of the benefits which were available under the Plan prior to the sale is unacceptable in that it would permit Penn to retain for himself the benefit of his unlawful scheme and fail to take into account the expectancies of the participants in their continued employment and participation under the terms of the Plan. *President and Directors of Manhattan Co. v. Kelby*, 147 F.2d 465, (2nd Cir. 1944); *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 562–65, 51 S.Ct. 248, 75 L.Ed. 544 (1930).

13. The Court has the authority and the duty to enforce the remedy which is most advantageous to the participants and beneficiaries and most conducive to effectuating the purposes of the trust. *Restatement of Trusts, Section*, second 205 comment b.

14. In cases of a breach of trust by a fiduciary which adversely affect the interests of plan participants and beneficiaries, the appropriate goal of equitable relief should be to restore the plan participants and beneficiaries to the position in which they would have been but for the unlawful acts. *Restatement of Trusts, Second*, sections 205, 206. An order of rescission, setting aside or voiding the unlawful transaction, and restoration of profit or income lost to the plan are ordinary and frequently used remedies in such cases and are appropriate in this case.

15. Glen R. Eaves, Alleen M. Eaves and Ralph W. Penn as fiduciaries of the Plan have engaged in substantial violations of their fiduciary duties and should be removed. ERISA section 409(a); *Legislative History of the Employee Retirement In-come Security Act of 1974*, 94th Cong. 2d Sess. at 1174 (1976); Bogert, *Trusts and Trustees, Second Edition*, section 861 at 7.

## ATTORNEYS FEES

The attorneys for Glen R. Eaves, Alleen M. Eaves, Violet Cobbs, Richard Eades, Ralph Sitton and Marguirite Richards, who first brought this action have requested an award of attorneys fees. They assert that 29 U.S.C. § 1132(g) authorizes an award of attorneys fees, and that the award should be paid from the Plan assets, based upon what is called the "common fund" theory.

The Court finds that the participation of these attorneys in the preparation and trial of these combined cases has conferred a benefit on Plan participants and beneficiaries in addition to those who are named parties. The Court further finds that any time and effort expended in this case by these attorneys on behalf of Glen R. Eaves and Alleen M. Eaves should not be paid for out of Plan assets. The Court further finds and concludes that the amount of $4,500.00 will in a conservative way compensate these attorneys for the time and effort expended on behalf of the Plan beneficiaries other than Glen R. Eaves and Alleen M. Eaves and that when considered against the benefits bestowed upon these beneficiaries and participants it is fair, equitable and just that this amount should be paid from Plan assets to these attorneys.

## CONCLUSION

In making all such findings of fact and conclusions of law, the Court does not hold that it would be necessarily imprudent and thus unlawful in every case for a retirement plan to use its cash assets to invest primarily, or even totally, in qualified employer securities. Rather, it is the effect of such action in this particular case, and the manner in which that decision was made and carried out, which is clearly violative of the protections intended to be derived from ERISA. Indeed, this would seem to be the classic example of the abuse ERISA is in-

tended to prevent. Rescission of the offending scheme or transaction is, in this case, the appropriate remedy for the protection of the integrity and realistic value of the Plan's assets.

The Court's order giving effect to these Findings of Fact and Conclusions of Law is being filed separately and simultaneously herewith.